IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

FRANCES A. WINN and
THOMAS J. WINN                                              **PLAINTIFFS**

**VERSUS**                            CAUSE NO: 1:07cv1019 LG-JMR

HARRISON COUNTY, MISSISSIPPI,
HARRISON COUNTY SHERIFF'S DEPARTMENT,
GEORGE PAYNE, Individually, and in his official
capacity as Harrison County Sheriff, RICK GASTON,
individually and in his official capacity, PHIL TAYLOR,
individually and in his official capacity, DIANNE
GASTON-RILEY, individually and in her official capacity,
STEVE CAMPBELL, individually and in his official
capacity, and UNKNOWN DEFENDANTS 1-10          **DEFENDANTS**



SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
AUG 17 2007
J. T. NOBLIN, CLERK
BY_____ DEPUTY

## COMPLAINT

This is an action to recover damages from the defendants for violations of the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, while acting under color of authority, and specifically in violation of 28 U.S.C. § 1983 et seq.

### PARTIES

1.     Plaintiffs, FRANCES A. WINN and THOMAS J. WINN, are husband and wife, adult resident citizens of Harrison County, Mississippi, residing at 7448 Thompson Road, Long Beach, Mississippi 39560.

2.     Defendant, HARRISON COUNTY, MISSISSIPPI, is a political subdivision of the State of Mississippi, and may be served with process upon John McAdams, the Chancery Clerk of Harrison County, Mississippi, 1801 23rd Avenue, Gulfport, Mississippi 30502.

3.     Defendant, HARRISON COUNTY SHERIFF'S DEPARTMENT, is a law enforcement agency and political subdivision or entity organized to provide security and safety to the

1

citizens of Harrison County, Mississippi, and may be served with process upon serving Sheriff George Payne or his designee at the Harrison County Courthouse in Gulfport, Mississippi, or at the Harrison County Adult Detention Center at 10451 Larkin Smith Drive in Gulfport, Mississippi..

4.     Defendant, GEORGE PAYNE, is the elected and acting Sheriff of Harrison County, Mississippi, and an adult resident citizen of Harrison County, Mississippi, and may be served with process at 1801 23rd Avenue, Gulfport, Mississippi 39502. At all times material hereto, George Payne, as the elected and acting sheriff of Harrison County, Mississippi, was vested with the authority and duty to hire, train, supervise, set and enforce policies and procedures, and to function as the chief law enforcement officer of Harrison County, Mississippi. George Payne is sued in his official and individual capacities.

5.     Defendant, RICK GASTON, was formerly employed in a supervisory capacity with the Harrison County Sheriff's Department, but is now an adult resident citizen of Harrison County, Mississippi, and may be served with process through the Harrison County Sheriff's Department, at the Courthouse, 1801 23rd Avenue, Gulfport, Mississippi 39502. At all times material hereto, Rick Gaston was the booking supervisor of the Harrison County Adult Detention Center, employed by the Harrison County Sheriff's Department. He is sued in his official and individual capacities.

6.     Defendant, PHIL TAYLOR, at all times material hereto, was employed by the Harrison County Sheriff's Department in the capacity of Training Director, and may be served with process at the Courthouse, 1801 23rd Avenue, Gulfport, Mississippi 39502.

7.     Defendant, DIANNE GASTON-RILEY, at all times material hereto, was employed by the Harrison County Sheriff's Department as the Director of Corrections, and may be served

with process at the Courthouse, 1801 23rd Avenue, Gulfport, Mississippi 39502. Dianne Gaston-Riley is sued in her individual and official capacities.

8. Defendant, STEVE CAMPBELL, is believed to be currently employed by the Harrison County Sheriff's Department, and may be served with process at the Courthouse, 1801 23rd Avenue, Gulfport, Mississippi 39502. Steve Campbell is sued in his official and individual capacities.

9. UNIDENTIFIED DEFENDANT 1 is a black male employed by the Harrison County Sheriff's Department as a jailer at the time of the acts sued upon herein. The specific conduct of this unidentified defendant is set forth by Plaintiffs. However, his identity, employment status, and current location are presently unknown. Once determined, Plaintiffs intend to specifically name this individual as a proper party defendant.

10. UNIDENTIFIED DEFENDANT 2 is a white male employed by the Harrison County Sheriff's Department as a jailer at the time of the acts sued upon herein. The specific conduct of this unidentified defendant is set forth by Plaintiffs. However, his identity, employment status, and current location are presently unknown. Once determined, Plaintiffs intend to specifically name this individual as a proper party defendant.

11. UNIDENTIFIED DEFENDANT 3 is a black female employed by the Harrison County Sheriff's Department as a jailer at the time of the acts sued upon herein. The specific conduct of this unidentified defendant is set forth by Plaintiffs. However, her identity, employment status, and current location are presently unknown. Once determined, Plaintiffs intend to specifically name this individual as a proper party defendant.

12. UNIDENTIFIED DEFENDANTS 4-10 are persons or entities whose exact identifying information and/or conduct are not specifically known to Plaintiffs at this time. Once

determined, Plaintiffs intend to specifically name these persons and/or entities as proper party defendants.

## JURISDICTION

13. This Court has civil rights subject matter jurisdiction under 28 U.S.C. § 1343, and federal question subject matter jurisdiction under 28 U.S.C. § 1331, and 28 U.S.C. § 1983. Plaintiffs, for specific and credible reasons, did not timely pursue potential state law claims within the statutory limitations of the Mississippi Tort Claims Act. Thus, there are no state law claims over which this court will be required to exercise supplemental jurisdiction.

## VENUE

14. Venue is proper in this jurisdiction and district pursuant to 28 U.S.C. §1391, because a substantial part of the real and immediate harm sustained by Plaintiffs occurred in this judicial district and division.

## FACTS AND ALLEGATIONS

15. On or about April 16, 2005, Plaintiffs were arrested simultaneously by one Deputy Overstreet of the Harrison County Sheriff's Department for alleged misdemeanor violations, specifically causing a domestic disturbance. Plaintiffs were transported to the Harrison County Jail for booking and to be held until bond could be set and posted. While Thomas Winn was transported directly to the jail facility, Frances Winn was first transported to Gulfport Memorial Hospital due to breathing problems. Once treated and released, Frances Winn was transported to the jail facility.

16. Plaintiff, Thomas J. Winn, was held for several hours and released upon his bond being posted by a local bondsperson. Plaintiff, Frances A. Winn, was held until approximately 8:30 the following morning, many hours after her bond had been posted by

4

the same bondsperson at the same time as for Plaintiff, Thomas J. Winn.

17. Upon entering the jail, Frances Winn, an elderly female, age 59 years, had no acute injuries, marks or bruises. (Official Jail Booking Record Excerpt, attached hereto as Exhibit 'A') She did require the assistance of a cane to ambulate and suffered from chronic heart problems, recently having had a stent implanted for this condition. She further required multiple daily medications for these and other chronic health conditions.

18. Frances Winn, upon entering the jail, was subjected to a strip search, including an intrusive cavity search, conducted by a female jailer, but conducted in the immediate presence of at least two male jailers. Following this search, Frances Winn was placed into a temporary holding cell with no light.

19. While in the holding cell, Frances Winn was upset at the brutality of her treatment and questioned a nearby female jailer (believed to be Defendant Regina Rhodes) as to why she was being treated in such a manner. The female jailer's response was to verbally taunt Frances Winn very loudly, thereby inciting her to become more traumatized and upset.

20. During her detention in the holding cell, Frances Winn repeatedly asked for a drink of water, as certain of her prescription medications caused dehydrating effects and required her to ingest regular amounts of water. Despite her multiple requests, and eventual begging, Mrs. Winn was denied water until finally being offered a miniscule amount by Defendant Teel. The water offered to Mrs. Winn by Defendant Teel consisted only of approximately one ounce, and was contained in a paper cup covered in dirt that appeared to have been pulled from a trash receptacle. While this occurred, an unidentified black male jailer was taunting Mrs. Winn with his food and drink from McDonald's restaurant, which he was consuming in the booking area at the time. Mrs. Winn was never offered any food, and

only the small amount of water, during the entire time she was held at the jail facility (some 18 hours).

21.    On numerous occasions when Frances Winn was quietly suffering in her holding cell, a male jailer (believed to be Defendant Ryan Teel) would approach the holding cell door and strike it abruptly with his fist or another object, causing fright and further trauma to Mrs. Winn, which resulted in her crying repeatedly. This repetition of events persisted for approximately two hours, until Mrs. Winn was moved from the holding cell to another area of the jail facility.

22.    At one point during the above course of events, a black male jailer approached the door of the holding cell and threatened to return to her cell with a condom, implying a threat of rape or sexual assault, if Mrs. Winn did not stop crying.

23.    Thereafter, two male deputies (the aforementioned unidentified black male and the jailer believed to be Defendant, Ryan Teel) approached the door of the holding cell, opened it and undertook to move Frances Winn to a general population area of the facility. Frances Winn was forcefully grabbed by both arms and thrown to the floor, causing painful bruising and injury to her arms and legs. (Photographs taken in hospital attached hereto as cumulative Exhibit 'B')

24.    Thomas Winn, after witnessing all of the aforementioned abuse and torment of his wife at the hands of the jailers, was brought to the booking desk to sign his bond paperwork in preparation for his release. He inquired of the female jailer as to the status of Mrs. Winn's bond, and was told by the female jailer that her bond was ready as well, but that Mrs. Winn would not be released until the next day. No reason was given for holding Mrs. Winn several hours after her bond had been posted, and the female jailer waved Mrs. Winn's bond

document in Mr. Winn's face in a taunting manner while laughing. The female jailer then, after getting Mrs. Winn's attention, waved Mr. Winn's bond papers and laughed while stating "he's going home and you're not", which again traumatically upset Mrs. Winn.

25. While Mr. Winn was being processed for release, an unidentified white mail jailer made the comment to him that they were "going to have fun with that old lady tonight." Mr. Winn informed the unidentified jailer that the "old lady" was his wife and asked why they were treated her so badly. The jailer refused to answer and hastily completed the processing of Mr. Winn's booking and release process. Despite a request by Mr. Winn to stay with his wife, he was forcefully removed from the facility and told to leave.

26. Meanwhile, while being transported to the general population cell, Frances Winn was repeatedly knocked to the floor by the escorting jailers. Further, Mrs. Winn was forced to attempt to carry a mattress through the hallways to the cell to which she was being moved. Unable to even walk without the aid of her cane, Mrs. Winn was obviously unable to walk and carry the mattress as ordered to do by the jailers. Consequently, Mrs. Winn was deprived of a mattress in the general population cell, despite the fact that it was approximately midnight and Mrs. Winn was to be wrongfully and illegally detained until at least the following morning, according to the statements of the jail staff.

27. While in the general population cell, Mrs. Winn began experiencing chest pains. An unidentified fellow inmate summoned a jailer to attempt to get help for Mrs. Winn. The jailer promptly dismissed the complaints and told Mrs. Winn to "stop whining." Luckily, the chest pains were not a precursor to a life-threatening condition, but likely were a result of the chronic heart condition suffered by Mrs. Winn at the time.

28. Mrs. Winn was arbitrarily forced to remain for several more hours in the jail facility,

despite the fact that her bond had been lawfully posted and she was eligible for release. During this time, she was further mistreated and abused, both physically and mentally.

29.     Once released, at approximately 8:30 a.m. on April 17, 2005, Mrs. Winn returned to the hospital for treatment of her injuries sustained while at the jail facility. Despite having no bruises or other acute injuries upon entering the jail, Mrs. Winn had multiple contusions and scrapes immediately upon her release. Mrs. Winn was treated for the physical injuries, but was then admitted to the behavioral unit for psychiatric care and evaluation for symptoms resulting from her abusive treatment at the Harrison County Jail. Mrs. Winn remained in the hospital behavioral unit for approximately two weeks and was, at that time, diagnosed with Post Traumatic Stress Disorder, from which she continues to suffer and for which she still receives regular treatment.

30.     Following these events of April 16 and 17, 2005, Plaintiff, Thomas Winn, returned to the Harrison County Jail to make a complaint regarding the abusive treatment sustained by his wife, Frances Winn, while detained. Mr. Winn was allowed to meet with Defendant, Sheriff George Payne. Payne stated to Plaintiff that he condoned the jailers' actions and specifically stated that he "expected deputies to cause injuries if control tactics are required." Defendant Payne never offered Mr. Winn any explanation of what control tactics were allegedly required against a 58-year-old physically disabled woman.

31.     Thereafter, Mr. Winn returned to the Sheriff's Department to file a written complaint regarding the incident. (Citizen Complaint Report attached hereto as Exhibit 'C') Jail personnel refused to accept the complaint form for several hours. Mr. Winn waited, and was eventually met by Defendant Rick Gaston, who accepted the complaint form from Mr. Winn, and advised Mr. Winn that "This wouldn't happen if you wouldn't beat your wife." Mr. Winn

departed the Sheriff's office to return home.

32. Upon leaving the facility in his vehicle, Mr. Winn was intercepted by a Sheriff's Department vehicle (white Chevrolet Suburban), and said vehicle tailgated Mr. Winn's vehicle for approximately two miles. Mr. Winn called the Sheriff's Department to report this activity, and shortly thereafter the vehicle turned off. However, within 1-2 minutes, another Sheriff's Department vehicle (white Ford sedan) intercepted Mr. Winn and performed the same maneuvers. Mr. Winn again called to report this activity and the vehicle pulled away in short order.

33. Thereafter, Defendant Steve Campbell, was assigned to investigate the complaint on behalf of the Harrison County Sheriff's Department. During his investigation, within days of the incident, Defendant Campbell telephoned the daughter of Plaintiffs and advised her that he feared for the safety of Mr. Winn, and that "they are going to hurt him."

34. Some two weeks later, Thomas Winn returned to the Sheriff's Department to check the status of the investigation into his previously-filed complaint, and asked to see the warden of the jail facility. Mr. Winn was met by two uniformed white male deputies, one of whom advised Mr. Winn that he was the warden of the facility. It is known that the warden at the time was actually a female, but this misrepresentation is of little material import. More significantly, upon making an inquiry to view surveillance tapes of the booking area from the night of the incident, Mr. Winn was then and there approached by Defendant, Steve Campbell, who stated, "What you are about to say is not on those tapes." Mr. Winn requested to see them anyway, and the request was then denied by Defendant Campbell. Mr. Winn departed.

35. Mr. Winn did not thereafter return to the Harrison County Sheriff's Department or

contact them to follow up on the complaint investigation. However, over the course of the following 6-8 weeks, Mr. and Mrs. Winn received numerous telephone calls to their residence from prisoners at the Harrison County Jail. Many of these calls were for the purpose of making both express and implied threats of violence against Mr. and Mrs. Winn if they elected to pursue their allegations in the complaint. Plaintiffs changed their telephone number on three separate occasions during this time, and yet continued to receive similar calls from the jail. Upon Mr. Winn calling the Sheriff's Department to complain, the calls ceased shortly thereafter.

36. After failing to receive any semblance of a fair investigation by the Harrison County Sheriff's Department, Plaintiffs brought their allegations to the attention of numerous other law enforcement agencies, including the Harrison County District Attorney, the Mississippi Attorney General, the Mississippi State Highway Patrol, and the Federal Bureau of Investigation. To the best of Plaintiffs' knowledge and belief, none have yet investigated the claims made by Plaintiffs. Mr. Winn also publicly addressed an open meeting of the Harrison County Board of Supervisors regarding the allegations. An unidentified uniformed sheriff's deputy addressed the Board following Mr. Winn's remarks and denied all allegations. To the best of Plaintiffs' knowledge and belief, no action was ever taken by the Board or any of its individual members to investigate the claims made by Plaintiffs. Thus, Plaintiffs now seek relief from this Court.

37. As a result of the acts and omissions enumerated above, Defendants are liable to Plaintiffs for the following violations of civil rights and resulting causes of action:

    A.    Use of unreasonable force and battery, causing physical injuries to Frances Winn;

B. Mental abuse and intentional infliction of emotional distress upon Frances Winn, causing permanent mental health injury to Frances Winn;

C. Depriving Frances Winn of proper hydration, nutrition, and medical care while in custody of the jail facility;

D. Infliction of emotional distress upon Thomas Winn by forcing him to witness the abuse and neglect of his wife;

E. Unlawfully and intentionally detaining Frances Winn for some 15 hours beyond the time when her bond was posted and she was eligible for release, which constituted punishment merely at the whim of jail staff;

F. Negligent and/or reckless hiring, training, and retention of staff directly responsible for the abuse and neglect endured by Plaintiffs;

G. Infliction of emotional distress upon Plaintiffs by directly and/or indirectly engaging in behavior and/or communication intended to threaten violence upon Plaintiffs;

H. Purposefully failing to investigate, and possibly intentionally obstructing an investigation into, potentially criminal conduct by deputies and jailers;

I. Allowing, condoning, and encouraging conditions inside the Harrison County Jail and behavior by its employees by which the civil rights of inmates are routinely, and often intentionally, violated;

J. Conspiracy to deprive Plaintiffs of their civil rights by certain defendants acting in concert with other defendants in known willful violations of Plaintiffs' civil rights;

K. Deprivation of Plaintiffs' civil rights by knowingly committing the above acts

which caused harm to Plaintiffs and which Defendants knew to unlawful;

L. Failure of certain deputies and other employees of the Harrison County Sheriff's Department to prevent or attempt to prevent the aforementioned deprivations, both individual and conspired; and

M. Failure to take remedial action to correct an abusive and recklessly brutal environment at the Harrison County Adult Detention Center, previously well-known to Defendants, which ultimately resulted in injuries to Plaintiffs.

38. At all relevant times, the Defendants, and each of them, were acting in their official capacities, under color of law and authority of the State of Mississippi.

39. In as much as many of the acts and omissions causing damage to Plaintiffs were committed with malicious intent and/or in absolute reckless disregard for the safety, well-being, and civil rights of the plaintiffs, Plaintiffs are entitled to recover punitive damages against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, having set forth their allegations above, Plaintiffs demand a trial by jury in this cause, and, upon proving their claims, demand judgment for actual and punitive damages in an amount such as will greatly and unquestionably exceed the minimum jurisdictional limits of this Court, for reasonable attorney fees, costs of this action and for any such other and further relief to which they may be entitled.

                Respectfully Submitted,

                THOMAS J. WINN and
                FRANCES A. WINN, PLAINTIFFS

                PERRY & COVINGTON, P.A.
                ATTORNEYS FOR PLAINTIFFS

                */s/ William M. Covington, III*
                WILLIAM M. COVINGTON, III
                MS BAR #99138
                Perry & Covington, P.A.
                2110 20th Street
                Gulfport, MS  39501
                (228) 868-2883 office
                (228) 868-2884
                wmc33@cableone.net

Of Counsel:

Martin Crump
MS Bar No.: 10652
2110 20th Street
Gulfport, MS  39501
(228) 868-2883 office
(228) 868-2884 fax

STATE OF MISSISSIPPI

COUNTY OF HARRISON

PERSONALLY CAME AND APPEARED BEFORE ME the undersigned authority in and for said County and State, the within named FRANCES A. WINN who, being by me first duly sworn, states upon oath that the matters and things averred herein are true and correct as they are stated, to the best of Plaintiff's knowledge and belief.

*Frances A. Winn*
FRANCES A. WINN

SWORN TO AND SUBSCRIBED BEFORE ME on this, the 17th day of August, 2007.

*Jane Harris Perry*
NOTARY PUBLIC

My Commission Expires:

[Notary Seal: STATE OF MISSISSIPPI NOTARY PUBLIC, ID # 71435, JANE HARRIS-PERRY, Commission Expires Sept. 24, 2011, HANCOCK COUNTY]

WILLIAM M. COVINGTON, III
MS Bar# 99138
Perry & Covington, P.A.
2110 20TH Street
Gulfport, MS 39501
Telephone: 228/ 868-2883
Fax: 228/868-2884

STATE OF MISSISSIPPI

COUNTY OF HARRISON

PERSONALLY CAME AND APPEARED BEFORE ME the undersigned authority in and for said County and State, the within named THOMAS J. WINN who, being by me first duly sworn, states upon oath that the matters and things averred herein are true and correct as they are stated, to the best of Plaintiff's knowledge and belief.

*[signature]*
THOMAS J. WINN

SWORN TO AND SUBSCRIBED BEFORE ME on this, the 17th day of August, 2007.

*[Notary seal: STATE OF MISSISSIPPI NOTARY PUBLIC, ID # 71435, JANE HARRIS-PERRY, HANCOCK COUNTY]*

My Commission Expires: Commission Expires Sept. 24, 2011

*[signature]*
NOTARY PUBLIC

WILLIAM M. COVINGTON, III
MS Bar# 99138
Perry & Covington, P.A.
2110 20TH Street
Gulfport, MS 39501
Telephone: 228/ 868-2883
Fax: 228/868-2884