**UNITED STATES DISTRICT COURT**
**IN THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**FRANCES A. WINN AND**
**THOMAS J. WINN**                                    **PLAINTIFFS**

**v.**                              **CIVIL ACTION NO. 1:07cv1019LG-JMR**

**HARRISON COUNTY, MISSISSIPPI;**
**HARRISON COUNTY SHERIFF'S**
**DEPARTMENT; SHERIFF GEORGE PAYNE,**
**INDIVIDUALLY AND IN HIS OFFICIAL**
**CAPACITY AS HARRISON COUNTY SHERIFF;**
**RICK GASTON, INDIVIDUALLY AND IN HIS**
**OFFICIAL CAPACITY; PHIL TAYLOR,**
**INDIVIDUALLY AND IN HIS OFFICIAL**
**CAPACITY; DIANNE GATSON-RILEY,**
**INDIVIDUALLY AND IN HER OFFICIAL**
**CAPACITY; STEVE CAMPBELL, INDIVIDUALLY**
**AND IN HIS OFFICIAL CAPACITY; AND**
**UNKNOWN DEFENDANTS 1-10**                    **DEFENDANTS**

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR QUALIFIED**
**IMMUNITY AND SUMMARY JUDGMENT BY DEFENDANTS, HARRISON COUNTY**
**SHERIFF'S DEPARTMENT, GEORGE PAYNE, JR., AND PHIL TAYLOR, IN THEIR**
**OFFICIAL AND INDIVIDUAL CAPACITIES**

COME NOW, Defendants, Harrison County Sheriff's Department, George Payne,

Jr., and Phil Taylor, in their individual and official capacities, by and through their attorney

of record, Dukes, Dukes, Keating & Faneca, P.A., and files this Memorandum of

Authorities in Support of their Motion for Summary Judgment, pursuant to Federal Rules

of Civil Procedure 56 on several grounds, including Qualified Immunity, and in support of

said motion would show unto the Court the following, to-wit:

**I. BACKGROUND**

**A.      Procedural History and Allegations**

The Complaint in the matter subjudice was filed on August 17, 2007.  The only

remaining Defendants are Harrison County, Mississippi, Harrison County Sheriff's Department, George Payne, Jr., and Phil Taylor. The Court, by Order [DN61], Adopted the Magistrate's Report and Recommendation granting Defendants Dianne Gatson-Riley, Steve Campbell and Rick Gaston's Motion to Dismiss, which the Plaintiffs did not object to, for the Plaintiff's failure to timely serve process upon Dianne Gatson-Riley, Steve Campbell, and Rick Gaston.

In their Complaint, Plaintiffs allege the following claims: 28 U.S.C. § 1983 et seq. and violations of the Plaintiffs' Fourth, Sixth, Eighth, and Fourteenth Amendment Rights as contained in the United States Constitution. Specifically, Plaintiff Thomas Winn claims that he suffered from the infliction of emotional distress by being forced, by the Defendants, to witness the alleged abuse and neglect of his wife while in the HCADC. Plaintiff Frances Winn makes the following allegations:

1. Mental abuse and intentional infliction of emotional distress causing permanent mental health injury;

2. Depriving Frances Winn of proper hydration, nutrition, and medical care while in custody;

3. Unlawfully and intentionally detaining Frances Winn for some fifteen (15) hours beyond the time that her bond was posted and she was eligible for release;

4. Negligent and/or reckless hiring, training, and retention of staff directly responsible for the abuse and neglect endured by Plaintiffs;

5. Infliction of emotional distress upon Plaintiff Frances Winn by directly or indirectly engaging in behavior and/or communication intended to threaten violence upon Plaintiffs;

6.    Purposely failing to investigate and possibly intentionally obstructing an investigation into, potentially criminal conduct by deputies and jailers;

7.    Allowing, condoning, and encouraging conditions inside the HCADC and behavior by its employees by which the civil rights of inmates are routinely, and often intentionally violated;

8.    Conspiracy to deprive Plaintiffs of their civil rights by certain Defendants acting in concert with other Defendants in known willful violations of Plaintiffs civil rights;

9.    Deprivation of Plaintiffs civil rights by knowingly committing the above acts which caused harm to Plaintiffs;

10.   Failure of deputies and other employees Harrison County Sheriff's Department to prevent or attempt to prevent the aforementioned deprivations both individual and conspired;

11.   Failure to take remedial action to correct an abusive and recklessly brutal environment at the HCADC, which resulted in injuries to Plaintiffs ;and

12.   Finally many of the acts and commissions causing damage to Plaintiffs were committed with malice intent and/or an absolute disregard for the safety, well being, and civil rights of the Plaintiffs, thus entitling the Plaintiffs to recover punitive damages against Defendants.

In regards to the Defendant Harrison County Sheriff's Department, there is no such separate and distinct legal entity, therefore, the Harrison County Sheriff's Department should be dismissed as a matter of law.[1]

---

[1] *See* <u>Miller v. Choctaw County's Sheriff Dept., et al,</u> 2006 U.S. Dist. LEXIS 14649 (N.D. Miss. Mar. 13, 2006); <u>Andrews v. Dallas,</u> 2001, U.S. Dist. LEXIS 4050 (N.D. Tex. Jan.3,

## B. Factual Background

On the afternoon of April 16, 2005, at approximately 2:56 p.m., Harrison County Sheriff's Department Deputy Charles Overstreet responded, to a 911 domestic violence call made by Plaintiff Frances Winn, to the Winn's residence located at 7448 Thompson Road, Long Beach, MS. (See Affidavit of Charles Overstreet **Exh. "A"**). When Deputy Overstreet arrived at the Winn residence, Plaintiff Frances Winn was outside the house. Mrs. Winn told Deputy Overstreet that she was angry with her husband, Thomas Winn, because he refused to bury her dead dog, the dog had been dead for three (3) days and that the dog was in a box on top of a table outside the family residence. Mrs. Winn told Officer Overstreet that Plaintiff Thomas Winn had spit in her face, grabbed her by the neck and pushed her. Frances Winn also told Officer Overstreet that Thomas Winn had a knife. Officer Overstreet then entered the Winn family residence and encountered Thomas Winn, who was not armed. Thomas Winn told Officer Overstreet that Frances Winn had spit in his face and started hitting him in the chest and arms and then Mr. Winn then grabbed Frances Winn around the shoulders and pushed her off of him. (See Affidavit of Charles Overstreet **Exh. "A"**).

Thomas Winn told Officer Overstreet that Frances Winn had not been taking her medication for depression. While in the house Deputy Overstreet noticed that one of the bedrooms in the Winn residence had been ransacked with drawers turned upside down and thrown onto the floor. Thomas Winn told Officer Overstreet that he had ransacked the room, because he was looking for money that Frances Winn had hidden from him and that Thomas Winn needed this money to go to the casinos to gamble. (See Affidavit of Charles

---

2001); Darby v. Pasadena Police Dept., 939 F.2d. 311 (5th Cir. 1991).

Overstreet **Exh.“A”**).

When Frances Winn was booked at the HCADC later that evening, she was found to have $1,100.00 in cash in her bra. (See HCADC Inventory Record **Exh.“B”**). Even though Plaintiff Frances Winn had made the original 911 domestic violence call, since Plaintiff Thomas Winn told Officer Overstreet that Frances Winn started the altercation by spitting in his face then started hitting him in the chest and arms, and that Thomas Winn then grabbed Frances Winn by the shoulders and pushed her off of him, Officer Overstreet placed both Frances Winn and Thomas Winn under arrest for domestic violence. (See Affidavit of Charles Overstreet **Exh.“A”**).

Frances Winn was then transported by ambulance to Memorial Hospital at Gulfport, to be treated for injuries received in this altercation and for her complaint of difficulty breathing. Upon admission to the Memorial Hospital at Gulfport emergency room, Mrs. Winn told admitting medical personnel that she had been assaulted and that she had neck pain. Mrs. Frances Winn reported that her husband grabbed her by the throat and pushed her down. Frances Winn reported pain in her neck, radiating into her right arm causing numbness. Frances Winn also complained of shortness of breath. Mrs. Winn further reported that she had been in pain for approximately one hour, and that she had a shooting pain in her neck. (See MHG medical records **Exh.“C”**).

While Frances Winn was being transported by ambulance to MHG, Officer Overstreet transported Plaintiff Thomas Winn to the HCADC, where Thomas Winn was booked into the HCADC at approximately 5:30p.m. and then released on bond at approximately 8:14 p.m. (See HCADC Booking Form **Exh.“D”**). After booking Plaintiff Thomas Winn, Officer Overstreet then went back to MHG to arrest Plaintiff Frances Winn

and transport her to the HCADC. An emergency room nurse informed Officer Overstreet that Frances Winn had $1,100.00 hidden her bra.

During the transport from MHG to the HCADC, Frances Winn told Officer Overstreet that she had nothing to live for and that she may commit suicide. Upon arrival at the HCADC, Officer Overstreet informed the booking officer that Frances Winn had currency in her bra and that she made suicidal statements. (See Affidavit of Charles Overstreet **Exh."A"**).

A HCADC Personal Property form showing the items taken from Mrs. Winn during booking listed the following; a watch, a pair of black pants, a blue shirt, two socks, and $1,100.00 retrieved from her bra. Mrs. Winn had no shoes when she arrived at the HCADC. Due to her threats of possible suicide made to Officer Overstreet, Frances Winn was issued a suicide gown and dressed in same by a female deputy.( See HCADC medical record **Exh."E"**). No male deputies witnessed Mrs. Winn being disrobed and dressed in the suicide gown. (See Depo. of Frances Winn T.27L.7 -16 **Exh."F"**). Frances Winn, distraught and hysterical because she had been arrested following the 911 call she made reporting her husband's assault upon her, would not cooperate with the deputies and allow her booking photograph or her fingerprints to be taken. As Frances Winn would not cooperate and allow the booking process to be completed, she could not be released on bond until she permitted the booking process to be completed. (See Affidavit of Charles Overstreet, **Exh."A"**).

Officer Overstreet, returned to the HCADC later the evening of April 16, 2005 after making another arrest. He then learned from booking deputies that Frances Winn was crying and hysterical and that she would not permit her booking photograph or her

fingerprints to be taken.  Officer Overstreet then went into the booking area holding cell that Frances Winn was in and tried to explain to her that she should cooperate and allow her booking photograph and fingerprints to be taken so that she could be bonded out.  (See Affidavit of Charles Overstreet)

Frances Winn was released at approximately 8:30 a.m. the following morning, April 17, 2005.  Frances Winn was picked up by her daughter, Terri Jo Blackwell and taken to her daughter's home at 7474 Thompson Road, Long Beach, MS, which is adjacent to the marital domicile of the Winn's at 7448 Thompson Road, Long Beach, MS.  On or about April 19, 2005, Frances Winn was admitted to Memorial Hospital ER complaining of chest pain and reporting "in an abusive situation with husband x 44 years.  (See MHG medical records, **Exh."C"**).  Frances Winn was then seen by Dr. Phillip D. Compton on May 5, 2005.  Dr. Compton noted on Frances Winn's medical record of May 5, 2005, "She has been under an inordinate amount of stress recently.  Her husband is reportedly abusive. She is living back at home with him.  She recently left from MBH prior to receiving final discharge instructions.  She spent a night in jail due to her husband's allegations prior to the hospitalization."  (See Dr. Phillip Compton medical records, **Exh."G"**).

Plaintiffs' filed a citizens complaint (See **Exh."H"**), following this incident.  This complaint was investigated by Harrison County Director of Professional Standards, Captain Steve Campbell.  None of the allegations complaining of abuse by the HCADC booking deputies were revealed on the video tapes from the HCADC, as determined by a review by Steve Campbell.  The Internal Affairs investigation determined that the Plaintiff's allegations were unfounded. (See George Payne's Affidavit, **Exh."I"**).  Plaintiff Thomas Winn met with Steve Campbell and  Wayne Payne, and later with Sheriff George Payne

to review this finding, which Mr. Winn vehemently disagreed with.

Plaintiffs, Thomas Winn and Frances Winn, appeared in the Justice Court of Harrison County on August 5, 2005, on the charges of Domestic Violence, Simple Assault amended Disturbance of Family Peace. Thomas Winn and Frances Winn both entered pleas of no contest to the charge of Domestic Violence and both Thomas Winn and Frances Winn were placed on a one (1) year nonreporting, unsupervised good behavior probation. (See Justice Court Charge sheet and Adjudication and Rights of Victims of Crime, **Exh."J"**).

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

A motion for summary judgment should be granted where: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. See Howard v. City of Greenwood, 783 F. 2d 1311, 1315 (5th Cir. 1986). However, to survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. See Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). A plaintiff confronted with a summary judgment motion may not rest on mere conclusory allegations. See Dunlap v. City of Tupelo, No. 1:95CV67-D, 1996 U.S. Dist. LEXIS 21333 *16, n.8 (N.D. Miss. Mar. 8, 1996). When a movant for summary judgment has met its burden in demonstrating no genuine issue of fact, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of fact for trial. See id. To avoid entry of judgment against it, the non-movant must bring forth significant probative

evidence demonstrating the existence of a triable issue of fact.  See Howard, 783 F. 2d at 1315.  If viewing all of the material facts alleged by Plaintiff as true, he is not entitled to recover as a matter of law, then summary judgment in favor of Defendant is appropriate.

## B.  PLAINTIFF FAILS TO STATE AN OFFICIAL CAPACITY CLAIM AGAINST GEORGE PAYNE OR PHIL TAYLOR

Claims against governmental agents or officers in their official capacities are essentially claims against the governmental entity itself.  See Moore v. Carroll County, Miss., 960 F. Supp. 1084, 1087 n.3 (N.D. Miss. 1997). The suit is against the office that the employee holds and not the actual employee.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Plaintiff's official capacity claims against Sheriff Payne are in reality, claims against Harrison County, or the office of the Sheriff of Harrison County.

Under the decisions of the Fifth Circuit, proof of municipal liability (official capacity claims) sufficient to satisfy the United States Supreme Court decision in Monell v. Dep't. Of Social Sciences, 436 U.S. 658, 694, (1978), requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is that policy or custom.  See Id., Piotrowski, 237 F. 3d 567, 578 ( 5th Cir. 2001,) Pineda, et al. v. City of Houston, No. 01-20189, 2002 U.S. App. Lexis 8904, at *4 (5th Cir. May 9, 2002).  "Isolated, unconstitutional actions by municipal employees will almost never trigger liability."  Id.  The three requirements for municipal liability outlined above are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself.  See Piotrowski, 237 F.3d at 578 -79.  Municipal liability cannot be imposed on the theory of respondeat superior or for individual unconstitutional acts of lower level employees.  See Board of Commissioners of Bryan County v. Brown, 520 U.S. 397, 403 (1997).  Instead, the alleged constitutional

violation must occur pursuant to an official custom or policy in order for municipal liability to exist. See id.[2] Monell established a high threshold of proof in this regard by stating that the official policy must be the "moving force" behind the alleged violation. See id. at 580. An official policy cannot be inferred from a single unconstitutional act. See Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987); Whiting, 222 F. Supp. 2d at 816.

In addition, not only must the Plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. Piotrowski, 237 F.3d at 580. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. Peters v. City of Biloxi, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999).

In the case at bar, Plaintiffs' claims are insufficient to establish official capacity Section 1983 liability. Plaintiffs cannot demonstrate that either suffered a constitutional deprivation; but even if either could prove a constitutional violation, based upon the undisputed facts, Plaintiffs cannot establish that it occurred pursuant to any policy, custom, or practice of the Harrison County Sheriff's Office and/or Harrison County, therefore Defendant George Payne is entitled to Summary Judgment as a matter of law.

As it is undisputed that Defendant Phil Taylor is not a policy maker for the Harrison County Sheriff's Department, Defendant Taylor is entitled to Summary Judgment as a

---

[2] A municipality cannot be held liable solely because it employs a tortfeasor, in other words, it cannot be held liable under section 1983 on a theory of respondeat superior. See Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992). Thus, a local government may not be sued under section 1983 for an injury inflicted solely by its employees or agents.

matter of law.

**C.     PLAINTIFF FAILS TO ALLEGE A CONSTITUTIONAL VIOLATION**

Excessive Use of Force

It is undisputed that Plaintiff Frances Winn was brought in on charges of domestic violence and that she was a pretrial detainee at the time of the alleged incident.  (See Affidavit of Charles Overstreet **Exh "A"**).  The Fifth Circuit has held that when examining excessive force claims by pretrial detainees, the appropriate standard is whether the measure taken inflicted unnecessary or unwanton pain and suffering, which depends upon whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm, _Valencia V. Wiggins_, 981 F2d. 1440, 1446 (5th Cir. 1993).  Because there is often no evidence that the jail officials subjected intent, courts focus on certain objective substance to suggestive of intent, such as, (1). The extent of the injuries suffered; (2). The need for the application of force; (3). The relationship between the need and the amount of force used; (4). The threat reason perceived by the responsible officials; and (5). Any efforts made to temper the severity of the forceful response, See id. at 1446-47.

Plaintiff Thomas Winn alleges no use of excessive force upon his person, but rather claims that his damages are  intentional infliction of emotional distress upon Thomas Winn by forcing him to witness the abuse and neglect of his wife. (See Complaint Paragraph 37-D). During his deposition (See **Exh."K"** T.65, L.8-24), Thomas Winn was surprised to learn that Plaintiff's Complaint contained his complaint of intentional infliction of emotional distress.  Thomas Winn then admitted that he had not received any medical treatment for emotional distress.

Plaintiff Frances Winn claims permanent mental health injury, arising form her various claims of physical and verbal abuse by the non-Defendant HCADC booking deputies as summarized as follows:

Physical assault:

HCADC Deputies grabbed her by both arms and threw her to the floor and she was repeatedly knocked to the floor by jailers.

Verbal Assault:

HCADC non-Defendant deputies stuck the glass window of her holding cell, a deputy threatening to return with a condom if she did not stop crying and a female jailer waved a copy of her husband's bond at her.

Other than these allegations by Plaintiffs, Plaintiffs have produced no corroborating evidence of any claims of physical or verbal abuse. Defendants' review of the DVD of the booking area surveillance cameras in the booking area do not show any of the events claimed by Plaintiffs. (See surveillance DVD, **Exh. "L"**).

Strip search:

Frances Winn claims that she was subjected to a strip search, including an invasive cavity search conducted by a female deputy in the presence of two male deputies.

Frances Winn, while being dressed in a suicide gown by a female deputy, was instructed to squat and cough. There was no invasive cavity search. (See Frances Winn Depo. T.78, L.2 -25 & T.79, L. 1 -4). There were no male deputies present (See Frances Winn Depo. T. 80, L.1 -11).

Wrongful detention:

In Paragraph 37-E of the Complaint, Plaintiffs allege Frances Winn was unlawfully

and intentionally detained for fifteen (15) hours beyond the time when she was eligible for release.  As Frances Winn was released at approximately 8:30a.am the morning of April 17, 2005, Plaintiffs are claiming that Frances Winn should have been released at approximately 6:30 p.m. on April 16, 2005, although Frances Winn did not arrive at the HCADC until approximately 6:45 p.m. (See **Exh. "M"**) and then refused to cooperate by not allowing her photograph and fingerprints to be taken.

Conspiracy:

Plaintiffs alleges Defendants conspired to deprive Plaintiffs of their civil rights.

As Plaintiffs make no State Law claims, including conspiracy, Plaintiffs can only be making a § 1985 Conspiracy claim.  Plaintiffs have not alleged nor offered proof of a § 1985 Conspiracy, as Plaintiffs are required to establish 1) the existence of a conspiracy involving state action; and 2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy;  *Pfannsteil v. City of Marion*, 918 F2d 1178, 1187 (5th Cir. 1990).

Inadequate medical care:

Frances Winn claimed that she had no acute injuries when she arrived at the HCADC, that she was denied water (except a small amount);  that she complained of chest pain while in the general population; and that her chest pain complaint was dismissed.

Contrary to Frances Winn's claims, she initially was offered and refused medical attention (See HCADC med. records **Exh."E"**).  Frances Winn was dressed in a suicide gown for her own safety as a result of her expressing suicidal thoughts to Deputy Charles Overstreet while in transport to the HCADC.  A review of Frances Winn's April 19, 2005, MHG emergency room (**Exh."C"**) records does not  reveal any lack of proper medical care

to Frances Winn during her overnight incarceration at HCADC. HCADC had in place an adequate and proper Health Care Policy at this time. (See George Payne Affidavit).

Failure to investigate:

Following this incident, Frances Winn's husband, Thomas Winn drafted a Complaint on behalf of Frances Winn to the Harrison County Sheriff's Department and singed it for her. (See Frances Winn Depo. T.69, L.16 -22 & T.73, L. 20 -25, & T.74, L.1 -11). HCSD's Dept. of Professional Standards Director, Steve Campbell investigated this Complaint and found that the Complaint was unfounded. (See Copy of IA Report, **Exh. "N"**). Plaintiffs do not agree with the result of the investigations, but offer no proof of the alleged inadequacy of the investigation.

Negligent hiring, training, and retention of staff responsible for alleged abuse endured by Plaintiffs:

In order to prevail on this claim, Plaintiffs must prove:

1). Training or hiring practices of Harrison County Sheriff's Department as promulgated by George Payne were inadequate; and 2). George Payne was deliberately indifferent in adopting the hiring or training policy; and 3). The inadequate hiring or training policy directly caused the Plaintiffs' alleged constitutional violations. *Boker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

Plaintiffs have offered mere allegations, but no proof that any one of the three above factors exist. Defendants are entitled to a judgment as a matter of law. The facts as set forth in the Affidavit of George Payne clearly support the conclusion that the hiring and training procedure of the HCSD were adequate.

The photographs (See **Exh. "O"**) taken by Plaintiff Frances Winn's daughter

approximately six (6) days after this incident, reveal bruises/contusions. The MHG medical record of April 16, 2005 at approximately 15:50, just prior to Frances Winn being transported to HCADC for booking, reveals that Mrs. Winn complained of an alleged assault by her husband stating that he grabbed her by the throat and pushed her down. Plaintiff Frances Winn reported pain in her neck radiating down into her right arm causing numbness due to this altercation. Frances Winn also complained of shortness of breath, although this report indicates no visible reddening or bruising seen, such bruising would not likely be visible within a few hours of the assault by her husband.

The MHG emergency room record of April 19, 2005, (two days following Plaintiff Frances Winn's release from HCADC), reveals that Plaintiff Frances Winn was admitted at approximately 17:37 hrs. on April 19, 2005, where she complained of chest pain and that she was in an abusive situation with her husband of forty-four (44) years, and under social history: "states no where to go". This record notes Plaintiff Frances Winn's past surgical history and medical history of Fibromyalgia and that she was seen in the ER on Saturday. This record makes no mention of bruises, scrapes, abrasions, or contusions to Plaintiff Frances Winn.

Plaintiff Frances Winn has no corroborating witnesses to the various complaints of physical abuse listed above, nor does the security surveillance DVD of the booking area reveal any of the incidents that Plaintiff Frances Winn claims.

The Supreme Court has held that a significant injury is not required for an excessive force claim, however a Plaintiff must show he has suffered at least *some injury* See *Jackson v. Culbertson*, 984 F2d. 699 (5th Cir. 1993), Knight v. Caldwell, 970 F2d 1430, 1432 (5th Cir. 1992). The Eighth Amendment's prohibition of cruel and unusual punishment

which is applicable to pretrial detainees excessive force claims necessarily excludes from constitutional violations de minimus uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind", Jackson, 984 F2d at *700 (citing *Hudson v. Miller*, 112 Sct 995, 1100 (1992).

_____Therefore, as the MHG April 16, medical record reporting the assault upon Frances Winn by Thomas Winn, is the only recorded and reliable explanation of the "bruises" shown on Plaintiff Frances Winn in the subsequent photos taken by the Plaintiffs' daughter, it is undisputed that Plaintiffs are incapable of proving a constitutional violation as to any excessive use of force upon Plaintiff Frances Winn while detained at the HCADC.

_____**D.    Plaintiffs Cannot Establish That There Existed A Policy, Practice, Or Custom, Of Which George Payne Either Promulgated Or Was Aware Of, That Was The Moving Force Behind Any Alleged Constitutional Violation.**

Even assuming Plaintiff could prove a constitutional violation, Plaintiff can not prove that the moving force of the violation was a policy, practice, or custom at the HCADC of which a policy maker was aware and deliberately indifferent to. It is undisputed that Sheriff Payne is the only policymaker at the Harrison County Sheriff's Department; (Aff. of Payne **Ex. "I"**) however, no such policy, practice, or custom existed at the HCADC which caused Plaintiff's alleged constitutional violations.

In the Complaint, Plaintiff alleges that there existed a policy and/or custom of a widespread practice of using excessive force and to cover up (conspiracy) the assaults, failure to supervise the HCADC Deputies involved, a failure to protect inmates, intentionally inflict emotional distress, deny necessary medical care and wrongfully detain pretrial detainees.

In <u>Webster v. City of Houston</u>, the Fifth Circuit defined an "official" policy in part as:

> a persistent widespread practice of city officials or employees, which, although not authorized by official adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such policy must be attributable to the governing body of the municipality or to an official to who that body has delegative policymaking authority. Actions of officers or employees of a municipality do not render the municipality liable under §1983 unless they execute official policy as above defined.

<u>Webster v. Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984). The court identified the standard to be applied in these cases and held:

> . . . Under our standard this case turns on whether the City maintained a practice of allowing the use of excessive police force that was "a Persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions <u>must have occurred for so long or so frequently</u> that the course of conduct warrants the attribution to the governing body of knowledge that the <u>objectionable conduct is the expected, accepted practice of city employee</u>. . . .

<u>Id.</u> at 842. [Emphasis added][3]

In the case at bar, Plaintiffs cannot produce any evidence supporting their allegation that at the time of this incident there was a persistent widespread practice by employees of the Harrison County Sheriff's Department using excessive force and covering up such assaults, as no such policy or custom exists or existed. Plaintiffs' basis for this assertion consists of Newspaper accounts of the criminal conviction of a deputy (his direct supervisor

---

[3] As stated in <u>Bennett v. Slidell</u>, 728 F.2d 762, 768 (5th Cir. 1984), in describing "custom or usage," the Supreme Court has used such phrases as "persistent and widespread . . . practices," "systematic mal administration" of laws, practices that are "permanent and well settled," and "deeply embedded traditional ways of carrying out . . . policy." The Court further stated that "in the context of the question of city liability for such persistent conduct of its employees, i.e., conduct that has become a traditional way of carrying out policy has acquired the force of law, the persistent conduct must be attributable to the source of policy or law of the city, its governing body". <u>Id.</u>

was acquitted) and the fact that a few deputies plead guilty in return for reduced sentences for charges of assaulting, intimidating, or threatening detainees at the Harrison County Adult Detention Center and conspiring to conceal and cover up these assaults. This alone is insufficient for Plaintiffs to meet their burden. Even if one assumes *arguendo* that there was in fact a policy or custom of using excessive force or covering up such assaults, Plaintiffs would also have to show that George Payne, had actual or constructive knowledge of same, and that the custom was the moving force of violating Plaintiffs constitutional rights, which Plaintiff cannot do. Plaintiffs have not set forth any probative or admissible evidence supporting the assertion that George Payne of Phil Taylor had actual or constructive knowledge of any policy or custom relating to the use of excessive force or conspiracy to cover up said force. The Harrison County Sheriff's Office had in place at all relevant times reasonable and adequate policies regarding the use of force, health care, internal affairs and investigations, training, and other applicable policies which ensured the health and safety of both the inmates and officers. (See Policies attached to George Payne's Affidavit as **Exh. "I"** through **"I4"** ) Furthermore, as Geroge Payne also states in his affidavit, the official policy of the Harrison County Sheriff's Office and the Harrison County Adult Detention Center was at all relevant times to provide a safe and secure environment, not only for inmates, but also for officers and the general public. (See Payne Affidavit, **Exh. "I"**)

With respect to a section 1983 claim for an alleged custom or policy of inadequate supervision, a plaintiff must prove two elements: (1) the municipality must have consciously enacted a policy reflecting deliberate indifference to the constitutional rights of its citizens, and (2) the municipality must be the moving force behind the constitutional violation. See

18

<u>Peters v. City of Biloxi</u>, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999)(emphasis added)(citing

<u>Snyder v. Trepagnier</u>, 142 F.3d 791 (5th Cir. 1998)).  Municipal liability for inadequate

training and supervision "imposes on the plaintiff an extremely heavy burden." <u>Id</u>. Only in

limited circumstances can a municipality be held liable for a failure to train or supervise its

police officers.  <u>See</u> <u>id</u>. Proof of a single violent incident ordinarily is insufficient to hold a

municipality liable for inadequate training or supervision, and the plaintiff must demonstrate

at least a pattern of <u>similar</u> incidents in which citizens were injured to establish the official

policy requisite to municipal liability. <u>See</u> <u>id</u>.  (emphasis added) (quoting <u>Snyder</u>, 142 F.3d

at 795). Inadequate training or supervision of police officers can be characterized as the

cause of a constitutional tort if, and only if, the failure to train or supervise amounted to

deliberate indifference to the rights of persons with whom the police come into contact.

<u>Collins v. City of Harker Heights</u>, Tex. 503 U.S. 115, 123-124 (1992).  The Plaintiff here

must show that the failure to supervise reflects a "deliberate" or "conscious" choice by the

Sheriff to endanger constitutional rights.  <u>See</u> <u>id</u>.<sup>4</sup>

Plaintiff's allegation at most is failure to supervise; <u>not</u> failure to train.  The Sheriff's

Department had adequate policies and procedures in place to ensure the safety and

security of both the Harrison County Adult Detention Center, the officers and the inmates.

(See Exs. "G2" - "G11") Further, the Sheriff Department had in place adequate policies and

procedures to ensure all officers were properly trained and supervised.  Defendant Payne

---

<sup>4</sup> "[M]erely identifying inappropriate behavior by municipal employees, standing alone, will not support a Section 1983 claim against a municipality.  To do so would be tantamount to holding the municipality liable solely for its employees' actions.  To avoid that impermissible result, [a] plaintiff must show more.  First, there must be recurring situations presenting an obvious potential for constitutional violation at issue.  Second, the violation must be a plainly obvious or highly predictable consequence of the failure to train or supervise." <u>Jacobs v. City of Port Neches</u>, 7 F.Supp. 2d 829, 834  (E. D. Tex., 1998)(citing, <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997)).

properly supervised all deputies at the Harrison County Adult Detentions Center.  At no time was Defendant Payne deliberately indifferent to any detainees rights, including the Plaintiffs.  (See Payne Affidavit, **Exh. "I"**)

There were in existence adequate policies addressing the particular areas relevant to Plaintiff's Complaint, and the mere fact that the non-policy-making officers involved in the subject incident may have acted inconsistently with those policies in one particular occasion does not automatically establish an official capacity §1983 violation.  Assuming all of Plaintiff's allegations are true, at worst, all Plaintiff has demonstrated is an isolated, individual act by lower level employees on one occasion.  This is insufficient to trigger constitutional liability on George Payne or Phil Taylor.

Here, Plaintiff has produced no proof that there was a history of past similar incidents of which the George Payne was or should have been aware, which should have placed the George Payne on notice of the need to develop or revise policies regarding the use of force, health care, or other similar policies.  As stated earlier herein, Plaintiffs cannot demonstrate the deprivation of a constitutional right in the first place, nor can Plaintiffs point to the existence of any governmental policy, custom, or practice which actually caused a constitutional deprivation, or that there was a policy adopted with objective deliberate indifference to Plaintiff's constitutional rights.

**E.     In the Alternative, Defendants, George Payne and Phil Taylor, Acting in Their Official Capacities  are Entitled to Partial Summary Judgment Dismissing all Claims for Punitive Damages.**

Punitive damages are not recoverable against a municipality for an official capacity section 1983 claim.  This is because punitive damages are not allowed against a municipality under 42 U.S.C. §1983.  See Newport v. Fact Concerts, Inc., 453 U.S. 247,

271 (1981), <u>Dillon v. Jefferson County, Tex</u>., 1997 U.S. Dist. LEXIS 12090, *15(E.D. Tex. Mar. 17, 1997). Therefore, George Payne and Phil Taylor, in their official capacities, respectfully moves this Honorable Court to enter summary judgment dismissing any and all claims for punitive damages.

**F.    Plaintiffs' Claims Against George Payne and Phil Taylor in their Individual Capacities Fail**

      **1.    Defendants Payne and Taylor, in their Individual Capacities, are Entitled to Qualified Immunity**

As law enforcement officials, Defendants George Payne and Phillip Taylor, in their individual capacities are entitled to qualified immunity. <u>See</u> <u>Gagne v. City of Galveston</u>, 805 F.2d 558, 559 (5th Cir. 1986). The qualified immunity inquiry involves first, whether a plaintiff has properly alleged the violation of a clearly established constitutional right, and second, if the Plaintiff meets this threshold, whether the defendant-official's conduct was objectively reasonable in light of clearly established law at that time. <u>See</u> <u>Hare v. City of Corinth</u>, 36 F.3d 412, 414 (5th Cir. 1994); <u>Salas v. Carpenter</u>, 980 F.2d 299, 305-06 (5th Cir. 1992).

The initial burden is on the defendant-official to plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done this, the burden shifts to the plaintiff to rebut the qualified immunity defense by establishing that the official's conduct violated clearly established constitutional law. <u>The burden of demonstrating that the official did or did not violate a clearly established federal right then lies with the plaintiff</u>, not the official. <u>See</u> <u>Salas</u>, 980 F.2d at 306 (emphasis added). The Fifth Circuit does not require that a defendant official demonstrate that he did

not violate a clearly established federal right; "our precedent places that burden upon plaintiffs." Estate of Davis v. City of North Richland Hills, No. 04-10036, 2005 U.S. App. LEXIS 5893, at *10 (5th Cir. April 11, 2005).

The second step of the analysis, the objective reasonableness inquiry, focuses on whether a reasonable person would have believed his conduct was constitutional, in light of information available to him and the clearly established law. See Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001). Under this standard, even law enforcement officers who reasonably but mistakenly violate the Constitution receive immunity. See id.; Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000), cert. denied, 2001 U.S. LEXIS 136 (Jan. 8, 2001); see also Hunter v. Bryant, 502 U.S. 224, 227 (1991). If reasonably competent officers could disagree on the issue, immunity should be granted. See Mendenhall, 213 F.3d at 231. The United States Supreme Court has reminded us that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Saucier v. Katz, 121 S. Ct. 2151, 2157 (2001)(quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For qualified immunity purposes, a defendant's acts are deemed objectively reasonable unless it can be said that

> all reasonable officials in the defendant's circumstances, which include facts known to the defendant, would have then realized that the defendant's conduct violated the Constitution or federal statute.

Whiting v. Tunica County, 222 F.Supp. 2d 809, 815-16(N.D. Miss. 2002)(emphasis added).

Here Plaintiff must demonstrate that all reasonable officials would conclude that these Defendants violated Plaintiff's federally protected constitutional rights, based on the

information known to them at the time. See id. at 818. If reasonable officers could disagree, immunity applies. See id. (citing Poe v. Leonard, 282 F.3d 123, 125 (2nd Cir. 2002).

As illustrated below, Plaintiffs cannot meet the first prong of the qualified immunity analysis because they cannot demonstrate any of their constitutional rights were violated by these Defendants. Even if they could satisfy this first prong, these Defendants' conduct was objectively reasonable. Sheriff Payne and Phillip Taylor were not even aware of any alleged violation of Plaintiffs' constitutional rights until after the fact, nor can there be any dispute that Sheriff Payne and Phillip Taylor were never present and did not personally participate in any of the alleged violations. If Sheriff Payne and Phillip Taylor were not even aware of what was taking place, by definition, their conduct could not have been objectively unreasonable based on the circumstances then known to them. Upon being informed of the alleged incident, Defendants took the appropriate and necessary actions and investigated said allegations. (See **Exh. "I"**). The objective reasonableness of these Defendants' conduct is evident by the thoroughness of their investigation in to these incidents and the prompt final resolution. Therefore, George Payne and Phillip Taylor are entitled to qualified immunity from Plaintiffs' individual capacity claims.

**2. Plaintiffs' Claims Against George Payne and Phillip Taylor, in their Individual Capacities, Also Fail on the Merits Under Section 1983**

In addition to qualified immunity, George Payne and Phillip Taylor are entitled to summary judgment on the merits of Plaintiffs' individual capacity section 1983 claims, since Plaintiffs' apparent basis for holding these Defendants individually liable is that they are vicariously liable under a theory of respondeat superior for acts or omissions of his

subordinates.  As a matter of law, George Payne and Phillip Taylor cannot be held individually liable on a theory of vicarious liability or respondeat superior. In order to state a cause of action under section 1983, the Plaintiffs must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.  See Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995).  There is no dispute that George Payne and  Phillip Taylor had no personal involvement in the this incident.  Nor can Plaintiffs demonstrate any personal conduct by the George Payne or Phillip Taylor that was causally connected to the incidents.

As the Fifth Circuit has reiterated, "supervisory officials cannot be held liable under section 1983 for the actions of subordinates . . .  on any theory of vicarious or respondeat superior liability."  Estate of Davis , 2005 U.S. App. LEXIS at *11 (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989), and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)); Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).   Instead, the Plaintiff must demonstrate that the conduct of the supervisor himself denied the Plaintiff his constitutional rights.  See id. (emphasis added).  A supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).  A supervisory official is held  to a standard of deliberate indifference, which requires proof that he disregarded a known or obvious consequence of his action. Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 330 F.3d 681, 689 (5th Cir. 2003).  "A supervisor will not be held liable for unintentional oversight." Id.

Plaintiffs have not alleged any specific facts that would demonstrate that these

defendants were personally involved in any of Plaintiffs' alleged constitutional deprivations or that there was a causal connection between these defendants' actions and the alleged constitutional violations. It is undisputed that George Payne and Phillip Taylor had no personal involvement whatsoever in any of the events alleged in the Complaint until after the fact, nor is there evidence to support a claim that George Payne and Phillip Taylor themselves engaged in any wrongful conduct, which caused a constitutional violation. The only conceivable basis for holding George Payne and Phillip Taylor individually liable, then, is respondeat superior, a result forbidden by section 1983.

Furthermore, Plaintiffs cannot demonstrate that any of their constitutional rights were violated by these Defendants. Here, Plaintiff's Complaint is construed as alleging the following violations of their constitutional rights against these Defendants, use of excessive force, a failure to adequately train or supervise, civil conspiracy, and wrongful detention. As a matter of law, Plaintiff does not sufficiently allege the violation of any of these constitutional rights.

### (a)    Plaintiff Cannot Support a Failure to Train or Supervise Claim

The Complaint also alleges that Defendants are liable to Plaintiffs for failure to train and supervise. The Fifth Circuit has held that a supervisor not personally involve in the acts that deprived the plaintiff of his constitutional rights is liable under §1983 if (1) the Defendant failed to train or supervise the officers involved (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights, and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights Thompson v. Upshur County, Texas, 25 F.3d 447, 459 (5th Cir. 2001). Deliberate indifference in the context of section 1983 entails a greater level of

culpability than mere negligence, so that mere negligence is inadequate to impose liability. See Whiting v. Tunica County, 222 F.Supp. 2d 809, 817 (N.D. Miss. 2002). Ordinarily, proof of a single incident, rather than a pattern of serious similar violations, is insufficient to sustain a claim that a lack of training or supervision caused a constitutional violation. See id. (citing Snyder v. Trepagnier, 142 F.3d 791, 798-99 (5th Cir. 1998)). In a failure to train or supervise claim, to satisfy the deliberate indifference standard, a plaintiff must demonstrate a pattern of violations and that the inadequacy of training is obvious and obviously likely to result in a constitutional violation. See Estate of Davis, 2005 U.S. App. LEXIS at *14 (citing Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003)).

Here, Plaintiffs cannot support a claim that any allegedly deficient training occurred or that George Payne was deliberately indifferent to Plaintiffs' rights. There are no allegations asserting specifically how any alleged failure to train led to this incident. As previously stated by the Fifth Circuit, for liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective. See Benavides v. County of Wilson, 955 F.2d 968, 973 (5th Cir. 1992). Contrary to Plaintiff's claim, Deputy Jackson, as well as all other deputies at the Harrison County Adult Detention, were at all relevant times adequately trained and supervised. (See Affid. Of Payne as **Ex. "I"** and training records as **Ex. "I3"**).

Plaintiff fails to satisfy the deliberate indifference prong, since Plaintiff cannot show that these Defendants were aware of facts and circumstances from which he could have drawn the inference of a substantial risk of serious harm due to inadequate training or supervision, hiring, or retention, or that these Defendants actually drew that inference. Plaintiff fails to adequately allege the deprivation of a constitutional right, and these

26

Defendants are entitled to summary judgment on Plaintiff's individual capacity claims.

**(b)     Civil Conspiracy**

In the event that Plaintiff's complaint is construed as making an allegation of civil conspiracy under 42 U.S.C. 1983, said allegation fails as a matter of law.  In order to prove a conspiracy claim under §1983,   the Plaintiff must establish "(1) the existence of a conspiracy involving state action and (2) a deprivation  of civil rights in furtherance of the conspiracy by a party to the conspiracy." Pfannstiel, et al. v. City of Maron, et al. 918 F.2d. 1178, 1187 (5th Cir. 1990).  A conspiracy claim is not actionable without an actual violation of §1983.  Id. Furthermore, mere conclusory allegations of conspiracy cannot state a substantial claim of federal conspiracy under 42 U.S.C. § 1983. Hale v. Harney, 786 F.2d 688, 690 (5th Cir. 1986).  As evident by Plaintiffs' Complaint and depositions, they can not establish this claim against Defendants Payne, Riley, or Taylor.

There are no state law conspiracy claims as Plaintiffs, in Paragraph 13 of their Complaint, acknowledge that there are no state law claims over which this Court will be required to exercise supplemental jurisdiction.

(c)     **Plaintiffs' Excessive Force Claim Under Both 14th and 4th Amendment**

Plaintiffs do not allege that Defendants George Payne and Phil Taylor physically assaulted or mistreated either of them; therefore, these claims should be dismissed against these Defendants as a matter of law.

**G.      In the Alternative, Defendants, in their Official Capacities, are Entitled to Partial Summary Judgment Dismissing all Claims for Punitive Damages.**

Punitive damages are not recoverable against a municipality for an official capacity section 1983 claim.   This is because punitive damages are not allowed against a

municipality under 42 U.S.C. §1983.  <u>See</u> <u>Newport v. Fact Concerts, Inc</u>., 453 U.S. 247, 271 (1981).  In an inmate's section 1983 claim against a sheriff acting in his official capacity, punitive damages may not be recovered.  <u>See</u> <u>Dillon v. Jefferson County, Tex</u>., 1997 U.S. Dist. LEXIS 12090, *15(E.D. Tex. Mar. 17, 1997).  Therefore, in the event the Court does not grant summary judgment and dismiss all of Plaintiffs' claims, George Payne and Phillip Taylor, both in their Official Capacities, respectfully move this Honorable Court to enter partial summary judgment dismissing any and all claims for punitive damages against them in their official capacities.

### III. <u>CONCLUSION</u>

In summary, as an essential element of all of Plaintiffs' federal claims against Defendants Payne and Taylor, they must first establish the deprivation of a constitutional right.  This they are  unable to do since, based on the undisputed facts, Plaintiffs are incapable of demonstrating that Defendants Payne and Taylor, in either their individual or official capacities, acted with deliberate indifference.  Even assuming Plaintiffs could demonstrate the violation of a constitutional right, their individual capacity claims against Payne or Taylor, by definition they could not have acted in an objectively unreasonable manner since they had no involvement in the events of or awareness of such allegations until after the fact.  Furthermore,  Defendants Payne and Taylor, as a matter of law, cannot be held individually liable on a theory of vicarious liability or respondeat superior. Nor can Plaintiffs show that, even assuming either suffered a constitutional violation, it occurred pursuant to a policy, custom, or practice of Harrison County or the Sheriff's Office, thus barring any official capacity claim against  Defendants Payne, or Taylor.

RESPECTFULLY SUBMITTED, this the 16th day of December, 2008

**HARRISON COUNTY SHERIFF'S DEPARTMENT, SHERIFF GEORGE PAYNE, JR., AND PHIL TAYLOR, OFFICIALLY AND IN THEIR INDIVIDUAL CAPACITIES**

**BY:    DUKES, DUKES, KEATING & FANECA, P.A.**

BY:    *s/Cy Faneca*
        CY FANECA

## CERTIFICATE OF SERVICE

I, CY FANECA,  do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to  Thomas Winn and Frances Winn, 7488 Thompson Road, Long Beach, Mississippi 39560 on this the 16th day of December, 2008.

*s/Cy Faneca*
CY FANECA

CY FANECA,  MSB #5128
**DUKES, DUKES, KEATING & FANECA, P.A.**
2909 13th Street, Sixth Floor
Post Office Drawer W
Gulfport, Mississippi 39502
Telephone - (228) 868-1111
Facsimile - (228) 863-2886